**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| SHARON L. BROWN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:17-CV-148-JEM |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Deputy Commissioner for Operations, | ) | |
| Social Security Administration, | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Sharon L. Brown

on April 4, 2017, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner

of Social Security [DE 16], filed December 11, 2017. Plaintiff requests that the decision of the

Administrative Law Judge be reversed and remanded for further proceedings. On January 22, 2018,

the Commissioner filed a response, and on February 5, 2018, Plaintiff filed a reply. For the following

reasons, the Court grants Plaintiff's request for remand.

**I.      Background**

On March 21, 2014, Plaintiff filed an application for benefits alleging that she became

disabled on August 31, 2013. Plaintiff's application was denied initially and upon reconsideration.

On August 3, 2016, Administrative Law Judge ("ALJ") William Spalo held a video hearing at which

Plaintiff, with an attorney, and a vocational expert ("VE") testified. On August 29, 2016, the ALJ

issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1.      The claimant meets the insured status of the Social Security Act through June
        30, 2019.

1

2. The claimant engaged in substantial gainful activity during the following period: August 31, 2013 through November 2014, but there have been continuous 12-month periods during which the claimant did not engage in substantial gainful activity. The findings address those periods.

3. The claimant has severe impairments: degenerative disc disease of the cervical spine, status post surgery on the left ankle and subsequent removal of hardware, asthma, obesity, late effects of cerebrovascular accident, and depression.

4. The claimant does not have an impairment or combination of impairments that meet or medically equal the severity of one the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

5. The claimant had the residual functional capacity to perform light work, except: no climbing ladders, ropes, or scaffolds; occasional climbing ramps or stairs; occasional balancing, stooping, crouching, kneeling, and crawling; frequent handling with the right dominant upper extremity. Claimant must avoid concentrated exposure to extreme cold and extreme heat; avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts, and gases, as well as poorly ventilated areas. Claimant is limited to simple, routine, repetitive tasks, and should have only brief superficial interaction with coworkers.

6. The claimant is unable to perform past relevant work.

7. The claimant was 51 years old, defined as an individual closely approaching advancing age, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because the claimant is "not disabled," whether or not he has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 31, 2013, through the date of the decision.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II.    Standard or Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,*

705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## III.  Analysis

Plaintiff argues that the ALJ erred in evaluating Plaintiff's headaches, failed to properly evaluate the opinion of Plaintiff's treating physician, failed to explain how he incorporated all of Plaintiff's limitations into the RFC, and failed to adequately incorporate Plaintiff's limitations in the hypothetical posed to the VE. The Commissioner argues that the ALJ's findings are supported by

substantial evidence.

Plaintiff's treating physician twice opined that Plaintiff was totally disabled and unable to work, once in a letter dated October, 2015, and the second time as part of a medical source statement. The ALJ gave little weight to his opinions as internally inconsistent with his own findings and with the overall evidence of record.

"[A] judge should give controlling weight to the treating physician's opinion as long as it is supported by medical findings and consistent with substantial evidence in the record. *Kaminski v. Berryhill*, 894 F.3d 870, 874 (7th Cir. 2018) (citing 20 C.F.R. § 404.1527(c)(2); *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018)); *see also Gudgel*, 345 F.3d at 470; *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). If the ALJ declines to give a treating source's opinion controlling weight, he must still determine what weight to give it according to the following factors: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6). Furthermore, "whenever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).

The ALJ discounted the opinion of Plaintiff's treating physician as internally inconsistent and inconsistent with the evidence of record. The ALJ did not include any explanation of how the physician's opinion was internally inconsistent, although he includes lists of citations to the record,

The records he cites to do show "no clubbing, cyanosis, or edema," as the ALJ states, but it is not apparent how lack of those particular problems means that the physician's reports of Plaintiff's chronic pain, panic attacks, headaches, and arm weakness, among other symptoms, are to be disbelieved. Instead, the citations to medical records addressing a few physical areas in which Plaintiff does not suffer disfigurement appear to be impermissible cherry-picking of the record, particularly combined with the failure to evaluate the records that do support the physician's findings. *See, e.g., Kaminski*, 894 F.3d at 874-75; *Gerstner*, 879 F.3d at 261-63.

Although medical evidence "may be discounted if it is internally inconsistent or inconsistent with other evidence," *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995) (citing 20 C.F.R. § 404.1527(c)) (other citations omitted), the ALJ "must provide a 'logical bridge' between the evidence and his conclusions." *O'Connor-Spinner*, 627 F.3d at 618. The ALJ failed to build that logical bridge in this case, leaving the Court unable to follow the reasoning behind the ALJ's conclusion that the opinion of Plaintiff's treating physician is unsupported by other evidence in the record, a problem that is particularly concerning given the importance of treating physician opinions on issues of residual functional capacity. *See, e.g,. Hamilton v. Colvin*, 525 F. App'x 433, 439 (7th Cir. 2013) ("While the ALJ is right that the ultimate question of disability is reserved to the Commissioner, a treating physician's opinion that a claimant is disabled 'must not be disregarded.'") (quoting SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996)) (citing 20 C.F.R. § 416.927(e)(2)); *Roddy*, 705 F.3d at 636 ("Even though the ALJ was not required to give [the treating physician]'s opinion [that the claimant could not handle a full-time job] controlling weight, he was required to provide a sound explanation for his decision to reject it."); *Punzio*, 630 F.3d at 710 (7th Cir. 2011) ("[W]henever an ALJ does reject a treating source's opinion, a sound explanation must be given for

that decision.").

In this case, the ALJ did not identify any treating or examining source to whom he gave more than "little weight," despite the general requirement to give more weight to treating and examining sources, particularly where there is a long treatment relationship by someone with knowledge of particular impairments. Instead, he relied only on the agency physicians who merely reviewed Plaintiff's medical records. This failure to identify any treating or examining opinion entitled to weight leaves the Court unable to trace the path of the ALJ's reasoning from the medical evidence to his conclusion regarding Plaintiff's limitations.

Plaintiff argues that the ALJ also erred in considering that her headaches were not severe, despite significant evidence in the record of their frequency, duration, and severity. Despite the evidence in the record that Plaintiff consistently sought treatment for severe headaches, the fact that some of her medications caused headaches as side effects, and their inclusion by her treating physician as one of Plaintiff's ongoing symptoms that led him to consider her disabled, the ALJ did not mention them in his analysis of her impairments and determination of whether any of them meet a Listing. This complete failure to analyze Plaintiff's complaints of headaches leaves the Court unable to trace the ALJ's logic to his conclusion, and leaves the Court concerned that the ALJ substituted his own medical determination for that of the actual medical professionals whose opinions appear in the record. *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) "[A]dministrative law judges of the Social Security Administration[] must be careful not to succumb to the temptation to play doctor. . . . Common sense can mislead; lay intuitions about medical phenomena are often wrong."); *see also, e.g., Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009) (warning that an ALJ may not "play[] doctor and reach[] his own independent medical conclusion");

*Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). On remand, the ALJ is directed to thoroughly analyze the medical evidence in the record, including the voluminous record of Plaintiff's headaches and accompanying limitations to her ability to work.

In addition, although the ALJ found that Plaintiff has moderate difficulties in concentration, persistence, and pace, AR 20, he did not specifically explain how Plaintiff's moderate difficulties in concentration, persistence and pace were incorporated into the RFC. Furthermore, when a claimant experiences limitations in concentration, persistence, and pace, these limitations must be incorporated into the hypothetical posed to the VE, although there is not "a per se requirement that this specific terminology ('concentration, persistence, and pace') be used in the hypothetical in all cases." *O'Connor-Spinner*, 627 F.3d at 619. A hypothetical that does not include these terms may still be sufficient if it is "manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *Id.* A limitation to unskilled work is generally insufficient to account for moderate limitations in concentration, persistence, or pace because "[t]he ability to stick with a task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner*, 627 F.3d at 620-21 ("In most cases . . . employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace."); *see also Jelinek v. Astrue*, 662 F.3d 805, 813-14 (7th Cir. 2011) (concluding that limitations to sedentary and light unskilled work did not "address[] the impact of the mental limitations . . . which . . . limited [the plaintiff]'s ability to maintain regular work attendance, to carry out instructions, and to deal with the stresses of full-time employment");

*Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009) (rejecting the contention "that the ALJ accounted for [the plaintiff]'s limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks that do not require constant interactions with coworkers or the general public"); *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) (limitation to unskilled work did not account for limitations in concentration, pace, and mood swings); *Young v. Barnhart*, 362 F.3d 995, 1004 (7th Cir. 2004) (concluding that a limitation of "simple, routine, repetitive, low stress work with limited contact with coworkers and limited contact with the public" was inadequate to take into account the claimant's limitations).

The ALJ did not include any reference to the specific terminology "concentration, persistence, or pace" in the increasingly restrictive hypotheticals posed to the VE, although he did include a limitation to unskilled work. When Plaintiff's attorney questioned the VE about the need for the worker to remain on task, he testified that "the individual needs to be on task 85 to 90 percent of the time" and have only "eight to 10 unscheduled [absence] call-ins for a year." AR 62. These answers leave the Court unable to conclude that the ALJ appropriately found that Plaintiff is able to hold down a full time job.

On remand, the ALJ is reminded of the need to thoroughly analyze the medical evidence and personal testimony in the record, particularly statements relating to Plaintiff's ability to perform work-related activity, and to thoroughly explain how claimed limitations are either incorporated into the RFC or found to be unsupported. In addition, the ALJ must adequately incorporate those limitations into the hypothetical to the VE that is relied upon in determining the existence of jobs that Plaintiff is capable of performing.

**IV.** **Conclusion**

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 16] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 9th day of August, 2018.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:     All counsel of record